**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | No. 17-cr-00770 |
| v. ) | |
| ) | Judge Andrea R. Wood |
| JEFFREY JOHNSON ) | |

**MEMORANDUM OPINION AND ORDER**

Defendant Jeffrey Johnson has been convicted following a jury trial of one count of knowingly and intentionally possessing a controlled substance, namely, heroin and furanylfentanyl (an analogue of fentanyl), in violation of 21 U.S.C. § 841(a). The Court is now poised to impose Johnson's sentence. In anticipation of the final sentencing hearing, the Court with this opinion resolves Johnson's primary objections to the Presentence Investigation Report (Dkt. No. 116). The main issues are whether Johnson's prior state-court conviction for the manufacture or delivery of heroin was a "serious drug felony" subjecting him to a 15-year mandatory minimum sentence pursuant to 21 U.S.C. §§ 841(b)(1)(A) and 851, and whether he is properly treated as a career offender under the United States Sentencing Guidelines ("USSG" or "Guidelines"). Also before the Court is Johnson's amended motion for a new trial under Federal Rule of Criminal Procedure 33. (Dkt. No. 175.) For the reasons that follow, Johnson's motion for a new trial is denied and his sentencing objections are sustained in part and overruled in part.

**BACKGROUND**

On April 5, 2017, Chicago Police Department officers executed a search warrant for an apartment occupied by Johnson. During the course of their search, the officers discovered a sock concealing several small bags containing over 100 grams of a mixture and substance containing detectable amounts of furanylfentanyl (an analogue of fentanyl) and heroin. The discovery

provided the basis for the Government's superseding indictment here. Ultimately, Johnson was tried by a jury and, on September 20, 2019, he was found guilty of knowingly and intentionally possessing a controlled substance in violation of 21 U.S.C. § 841(a).

Prior to trial, the Government provided notice that in the event Johnson was found guilty, it would seek a sentencing enhancement pursuant to 21 U.S.C. § 851. (Dkt. No. 80.) Specifically, the Government stated that it would seek a 15-year mandatory minimum sentence under 21 U.S.C. § 841(b)(1)(A) based on Johnson's prior state-court conviction for a serious drug felony. Following the jury's guilty verdict, the Court held a § 851 hearing at which the Government introduced evidence that Johnson had a final conviction in case number 11 CR 0680701 in the Circuit Court of Cook County, Illinois, for the manufacture or delivery of heroin in violation of 720 ILCS 570/401(c)(1). The Court found that the Government had proved beyond a reasonable doubt the fact of conviction, that Johnson had served more than 12 months' imprisonment for the conviction, and that he had been released from his term of imprisonment for the conviction within 15 years of the commencement of the offense in the present case. (*See* Dkt. No. 106.) At that time, Johnson reserved his arguments (and the Court reserved its decision) as to how those facts impacted the sentence to which he would be subject. Instead, such issues would be addressed through post-trial motions and at sentencing.

Johnson timely moved for a judgment of acquittal under Federal Rule of Criminal Procedure 29(c)(1) after the jury's guilty verdict. (Dkt. No. 108.) In his motion, Johnson argued that the jury's guilty verdict violated the *Ex Post Facto* Clause of Article I, Section 9 of the United States Constitution and that he could not be subject to the enhanced penalty imposed by 21 U.S.C. § 841(b)(1)(A)(vi) because that provision was void for vagueness. The Court denied the motion and the case proceeded to sentencing.

In connection with his sentencing, Johnson raised two objections to the Presentence Investigation Report. (Dkt. No. 116.) First, he challenged the imposition of a 15-year mandatory minimum sentence pursuant to 21 U.S.C. § 841(b)(1)(A) because he committed the offense of conviction after a prior conviction for a serious drug felony—namely, the state conviction for manufacture or delivery of heroin that was the subject of the post-verdict § 851 hearing. Second, Johnson objected to the Presentence Investigation Report's recommendation that he be sentenced as a career offender under USSG § 4B1.1(a)(3) for having at least two prior controlled substance offenses. After hearing the parties' arguments at the initial sentencing hearing on March 10, 2020, the Court continued the sentencing to allow the parties to submit further briefing on Johnson's objections. But before that briefing could be completed, Johnson requested new counsel. The Court granted the request, substituted Johnson's current counsel into the case, and vacated the briefing schedule to give the new counsel time to familiarize himself with the facts and legal issues.

Johnson's new counsel subsequently filed what he styled as an "amended motion" to suppress evidence from the search of Johnson's residence (Dkt. No. 162), a request that this Court had previously denied. (Dkt. No. 51.) The amended motion sought to raise new bases for suppressing the drugs uncovered by police during that search. However, the Court denied the amended motion as untimely. (Dkt. No. 173.) The Court noted that Johnson had essentially tried to show good cause to excuse his untimely motion by making an ineffective assistance of counsel argument, as he claimed that his previous counsel was objectively unreasonable and had no strategic purpose for failing to raise in the pretrial motion to suppress the arguments presented in the amended motion. However, the Court declined to consider the effectiveness of Johnson's previous counsel in the good cause analysis.

3

Following the denial of his "amended" pretrial motion, Johnson filed an "amended post-trial motion," seeking to raise new arguments in support of his previous motion for a new trial. (Dkt. No. 175.) At a hearing held on January 12, 2021, the Court heard argument on Johnson's amended post-trial motion and further argument on Johnson's sentencing objections, for which the parties have also submitted additional briefing. The post-trial motion and sentencing objections are now ripe for ruling.

## DISCUSSION

### I. Motion for New Trial

Before proceeding to Johnson's objections to the application of the 15-year mandatory minimum sentence and career offender sentencing guideline, the Court must address the newly filed motion for a new trial. Johnson claims that this latest motion is meant to clarify and elaborate upon the arguments in his original post-trial motion concerning the imposition of the enhanced penalty provided by 21 U.S.C. § 841(b)(1)(A) based on the jury's finding that he possessed 100 grams or more of an analogue of fentanyl. But Johnson already filed a motion for a new trial, which the Court denied. Moreover, his amended motion comes more than a year after the jury's guilty verdict.

Under Federal Rule of Criminal Procedure 33(b)(2), a motion for a new trial grounded on a reason other than newly discovered evidence must be filed within 14 days of the guilty verdict. While the Court may grant an extension of time to file a post-trial motion under Federal Rule of Criminal Procedure 45(b), Johnson would have to show that his untimely motion was caused by excusable neglect. Here, there is no basis for granting an extension under Rule 45(b). Johnson's amended motion provides no explanation of what excusable neglect warrants allowing him to clarify and elaborate upon the arguments he made in his previously rejected motion for a new

trial. It appears that, like his amended pretrial motion, Johnson's only reason for bringing the untimely motion is to attempt to correct the work of prior counsel. But for the same reasons that Johnson's prior counsel's purportedly deficient performance did not supply good cause for his untimely amended pretrial motion, the Court similarly finds that ineffective assistance of counsel does not establish excusable neglect under Rule 45(b)(1)(B). For that reason, Johnson's amended motion for a new trial is denied.

Finally, the Court notes that Johnson claimed at the most recent court hearing that his primary purpose in bringing his amended post-trial motion was actually to raise sentencing issues, including certain policy arguments that he believes support a downward variance from the Guidelines range. To the extent Johnson seeks a lower sentence based on the arguments made in his post-trial motion, he may raise those arguments in connection with this Court's consideration of the sentencing factors under 18 U.S.C. § 3553(a) factors. But for the reasons discussed above, insofar as he seeks a new trial, Johnson's arguments are untimely and therefore cannot furnish a basis for that requested relief.

## II. Objection to 15-Year Mandatory Minimum Based Upon Prior Serious Drug Felony

Johnson objects to the imposition of a 15-year mandatory minimum sentence due to his prior conviction for a serious drug felony. A person who, like Johnson, is convicted under 21 U.S.C. § 841(b)(1)(A), is normally subject to a sentence of not less than 10 years. However, under 21 U.S.C. § 851, a defendant may be subject to a sentencing enhancement due to having one or more prior convictions. Relevant here, a defendant who has committed a violation of § 841(b)(1)(A) after a prior conviction for a "serious drug felony" is subject to a 15-year mandatory minimum sentence.

5

A "serious drug felony" is defined at 21 U.S.C. § 802(57) to mean "an offense described in section 924(e)(2) of Title 18 [*i.e.* a "serious drug offense"] for which—(A) the offender served a term of imprisonment of more than 12 months; and (B) the offender's release from any term of imprisonment was within 15 years of the commencement of the instant offense." For present purposes, the predicate "serious drug offense" described in 18 U.S.C. 924(e)(2), is "an offense under State law, involving manufacturing, distributing, or possessing with intent to manufacture or distribute, a controlled substance (as defined in section 102 of the Controlled Substances Act (21 U.S.C. § 802)), for which a maximum term of imprisonment of ten years or more is prescribed by law." 18 U.S.C. § 924(e)(2)(A)(ii).

The Government contends that Johnson's May 14, 2012, conviction in the Circuit Court of Cook County, Illinois, Case Number 11 CR 0680701, for manufacture or delivery of heroin in violation of 720 ILCS 570/401(c)(1) constitutes a serious drug felony warranting the imposition of the 15-year mandatory minimum. At the § 851 hearing, the Court found that Johnson served a term of imprisonment of more than 12 months in connection with that conviction and he was released from all terms of incarceration related to the conviction within 15 years of the commencement of the offense of conviction here. At issue, then, is whether a violation of 720 ILCS 570/401(c)(1) constitutes a "serious drug offense" as defined by 18 U.S.C. § 924(e)(2)(A)(ii). Johnson contends that because the elements of 720 ILCS 570/401(c)(1) prohibit the manufacture or delivery of a broader array of drugs than covered by the definition of "serious drug offense," his prior Illinois state-court conviction cannot be used as the basis for the imposition of § 841(b)(1)(A)'s 15-year mandatory minimum.

### A. Categorical Approach

To determine whether Johnson's Illinois conviction constitutes a "serious drug felony" and thus a basis for an enhancement under § 851, the Court must apply the categorical approach. Courts applying the categorical approach "compar[e] the state statute of conviction to the federal statute in question and ask[] whether the two statutes are a categorical match." *United States v. Elder*, 900 F.3d 491, 498 (7th Cir. 2018). This analysis "focuses solely on whether the elements of the crime of conviction sufficiently match the elements of the crime referenced in the federal statute, while ignoring the particular facts of the case." *Id.* Thus, if the Illinois statute of conviction is categorically broader than the crime described in the federal definition of "serious drug felony," the enhancement does not apply. *See Mathis v. United States*, 136 S. Ct. 2243, 2251 (2016).

As discussed above, the parties' dispute in this case centers on 18 U.S.C. § 924(e)(2)(A)(ii)'s definition of "serious drug offense," incorporated by reference into the definition of "serious drug felony." In *Shular v. United States*, 140 S. Ct. 779 (2020), the Supreme Court addressed the definition of "serious drug offense" and clarified the categorical methodology that courts must apply. Specifically, it held that courts should ask "whether the state offense's elements necessarily entail one of the types of conduct identified in § 924(e)(2)(A)(ii)," rather than engaging in "a generic-offense matching exercise" whereby the court "define[s] the elements of the generic offenses identified in § 924(e)(2)(A)(ii) [and] then compare[s] those elements to the elements of the state offense." *Id.* at 784–85 (internal quotation marks omitted).

Johnson contends that under the approach set forth in *Shular*, his Illinois conviction is categorically broader than the definition of "serious drug offense" because 720 ILCS 570/401(c)(1) criminalizes more controlled substances than federal law. Under 720 ILCS

7

570/401(c)(1), it is a Class 1 felony to manufacture or deliver, or possess with intent to manufacture or deliver "1 gram or more but less than 15 grams of any substance containing heroin, or an analog thereof." By comparison, a "serious drug felony" under § 841(b)(1)(A) requires that the defendant's prior offense be a "serious drug offense," which is "an offense under State law, involving manufacturing, distributing, or possessing with intent to manufacture or distribute, a controlled substance (as defined in section 102 of the Controlled Substances Act (21 U.S.C. § 802)), for which a maximum term of imprisonment of ten years or more is prescribed by law." 18 U.S.C. § 924(e)(2)(A)(ii); 21 U.S.C. § 802(57).

According to Johnson, the elements of 720 ILCS 570/401(c)(1) do not categorically match the conduct described in the definition of "serious drug offense" because a person can violate 720 ILCS 570/401(c)(1) by possessing a substance that is not treated as a controlled substance under federal law. His argument focuses on the differing definitions of the term "analog(ue)" under federal law and state law. In Illinois, a controlled substance "analog" includes any substance "that has a chemical structure substantially similar to that of a controlled substance in Schedule I or II, or that was specifically designed to produce an effect substantially similar to that of a controlled substance in Schedule I or II." 720 ILCS 570/401. By contrast, the definition of "serious drug felony" defines "controlled substance" by reference to section 102 of the Controlled Substances Act. That section defines a controlled substance analogue as a substance:

> (i) the chemical structure of which is substantially similar to the chemical structure of a controlled substance in schedule I or II; (ii) which has a stimulant, depressant, or hallucinogenic effect on the central nervous system that is substantially similar to or greater than the stimulant, depressant, or hallucinogenic effect on the central nervous system of a controlled substance in schedule I or II; or (iii) with respect to a particular person, which such person represents or intends to have a stimulant, depressant, or hallucinogenic effect on the central nervous system that is substantially similar to or greater than the stimulant, depressant, or hallucinogenic effect on the central nervous system of a controlled substance in schedule I or II.

8

21 U.S.C. § 802(32)(A).

The Seventh Circuit, in *United States v. Turcotte*, 405 F.3d 515 (7th Cir. 2005), *abrogated on other grounds by McFadden v. United States*, 576 U.S. 186 (2015), *as recognized in United States v. Novak*, 841 F.3d 721, 729 (7th Cir. 2016), adopted a conjunctive reading of the federal definition of "analogue," such that two conditions must be met for a substance to qualify as a controlled substance analogue: "(1) The substance in question must have a chemical structure substantially similar to a controlled substance (criterion one) ***and*** (2) it must ***either*** have a substantially similar effect on the central nervous system (criterion two) ***or*** be purported or intended to have such an effect (criterion three)." *Id.* at 521–23. But under Illinois law, an analog need only have a chemical structure substantially similar to a controlled substance or be designed to have a substantially similar effect on the central nervous system to a controlled substance.

Johnson claims that Illinois's definition is broader than the federal definition, therefore precluding the imposition of the 15-year mandatory minimum associated with a prior conviction for a serious drug felony. The Government, on the other hand, argues that under *Shular*, the federal definition of "controlled substance analogue" is irrelevant. It further argues that any differences between the two definitions of analogue are too minor to matter in the application of the categorical approach.

First, the Court rejects the Government's contention that differences in the state and federal definitions of controlled substances do not matter in the "serious drug offense" categorical analysis post-*Shular*. The *Schular* analysis requires this Court to compare the elements of Johnson's state conviction to the conduct set out under the definition of "serious drug offense." That conduct does not simply entail the manufacture, distribution, or possession with intent to manufacture or distribute a controlled substance; rather, it entails that conduct with respect to a

9

controlled substance *as defined by federal law*. That the substance constitutes a controlled substance under federal law is an essential component of the conduct covered under the definition of "serious drug felony."

That conclusion is confirmed by the Seventh Circuit's recent decision in *United States v. Ruth*, 966 F.3d 642 (7th Cir. 2020). There, the Seventh Circuit analyzed whether the defendant's prior conviction for possession with intent to deliver cocaine under 720 ILCS 570/401(c)(2) constitutes a "felony drug offense" for purposes of 21 U.S.C. § 841(b)(1)(C). A felony drug offense is defined under the federal statute to mean "an offense that is punishable by imprisonment for more than one year under any law of the United States or of a State or foreign country that prohibits or restricts conduct relating to narcotic drugs, marihuana, anabolic steroids, or depressant or stimulant substances." 21 U.S.C. § 802(44). The issue before the Seventh Circuit in *Ruth* concerned whether Illinois's definition of cocaine was more expansive than the federal definition of cocaine (which was deemed to be a narcotic drug for purposes of the felony drug offense definition). *Ruth*, 966 F.3d at 645–648. The divergence between the two definitions was arguably quite small—in Illinois, cocaine includes optical, positional, and geometric isomers whereas the federal definition includes only optical and geometric isomers. *Id.* at 647. Nonetheless, that mismatch was sufficient for the Seventh Circuit to conclude that the Illinois statute was "categorically broader than the federal definition." *Id.*

Although the Seventh Circuit was analyzing a different term in § 841(b), its analysis makes clear that even post-*Shular*, differences in the state and federal definitions of controlled substance affect the application of the categorical approach. Thus, this Court cannot ignore that the conduct described by § 924(e)(2)(A)(ii)'s definition of "serious drug offense" appears to cover a narrower range of heroin analogues than the analogs addressed by 720 ILCS 570/401(c)(1).

Further, the *Ruth* court found that even minor differences in definitions will preclude the application of an enhancement. The Government argues that, in reality, there will not be any practical difference between the Illinois and federal definitions of analogue. Yet, in *Ruth*, the Seventh Circuit rejected such an argument, explaining that "[i]t is not the province of the judiciary to rewrite Illinois's statute to conform to a supposed practical understanding of the drug trade." *Ruth*, 966 F.3d at 648.[1]

The Seventh Circuit did acknowledge that "[t]here may be an occasion where a state statute covers unquestionably nonexistent conduct" but declined to state how an analysis of such a circumstance would be conducted. *Id.* The Government recently argued to this Court that it is impossible for a substance deemed to be a heroin analog under Illinois's statute not also to constitute an analogue of heroin under the federal definition. But when the Government first addressed Johnson's sentencing objections, it conceded that "it is theoretically possible for a substance to be prosecuted as an analog under state but not federal law" and argued that Johnson had "not established that this is a reasonable probability." (Gov.'s Resp. to Objs. to the Presentence Investigation Report at 9, Dkt. No. 120.) In any case, in *Ruth*, an expert testified that his analysis of over 50,000 cocaine samples failed to yield any substance that did not match both the federal and state definitions of cocaine. Still, the Seventh Circuit stated that the testimony did not establish that such a substance did not exist and therefore declined to ignore the definitional differences. *Ruth*, 966 F.3d at 648; *see also United States v. De La Torre*, 940 F.3d 938, 952 (7th

---

[1] The Seventh Circuit noted in *Ruth* that the Government's argument about the lack of practical difference in statutory definitions derived from its reliance on Supreme Court precedent "caution[ing] courts against seizing on modest state-law deviations from the generic definition" of the crime and urging courts to instead focus on whether the relevant state law "substantially corresponds" to the generic crime. *Ruth*, 966 F.3d at 647–48 (quoting *Quarles v. United States*, 139 S. Ct. 1872, 1880 (2019)). However, the Seventh Circuit went on to state that "looking to whether elements 'substantially correspond' falls within a different categorical approach methodology and does not apply equally under the conduct-based method" set forth in *Shular*. *Id.*

11

Cir. 2019) ("[W]e do not think that the government's theoretical challenges are pertinent . . . when the plain language chosen by the Indiana legislature dictates that the Indiana statute is categorically broader than the federal definition of felony drug offense.").

Here, the Government has not only failed to establish that it is impossible for a substance to be deemed a heroin analog under Illinois law but not a controlled substance analogue under federal law, it has conceded the theoretical possibility of such a circumstance. Consequently, *Ruth* precludes the Court from dismissing the minor but real differences between Illinois and federal definitions of "analog(ue)."

### B.  Divisibility

Despite the Court's finding of a categorical mismatch between the crime set out in 720 ILCS 570/401(c)(1) and the federal definition of "serious drug felony," if subsection (c)(1) is divisible then Johnson's prior state conviction may still qualify as a "serious drug felony" by application of the modified categorical approach. Normally, the categorical analysis "is limited to 'the fact of conviction and the statutory definition of the prior offense.'" *United States v. Edwards*, 836 F.3d 831, 835 (7th Cir. 2016) (quoting *Taylor v. United States*, 495 U.S. 575, 602 (1990)). However, sometimes a statute is divisible, "meaning it 'sets out one or more elements of the offense in the alternative.'" *Id.* (quoting *Descamps v. United States*, 570 U.S. 254, 257 (2013)). "Under these circumstances a court may 'consult a limited class of documents to determine which alternative formed the basis of the defendant's prior conviction.'" *Id.* (quoting *Descamps*, 570 U.S. at 257). Documents that may be consulted under this "modified categorical approach" include "charging papers, jury instructions, and any available plea agreements or plea colloquies." *Id.*

Here, the Government argues that 720 ILCS 570/401(c)(1) is divisible because "heroin" and "analog of heroin" are alternative elements. In *Ruth*, the Seventh Circuit addressed a divisibility issue with respect to 720 ILCS 570/401(c)(2), which substantially mirrors subsection (c)(1) by making it a felony to manufacture or deliver or possess with intent to manufacture or deliver "1 gram or more but less than 15 grams of any substance containing cocaine, or an analog thereof." In *Ruth*, the Seventh Circuit concluded that this subsection was "clearly indivisible" because it "lists only one crime: possession with intent to distribute cocaine." *Ruth*, 966 F.3d at 650. Thus, there was "no uncertainty as to what statutory offense formed the basis of [the defendant's] crime of conviction," thereby ending the inquiry. *Id.* Although *Ruth* expressly states that subsection (c)(2) is indivisible, the Seventh Circuit's analysis focused solely on the "cocaine" portion of subsection (c)(2) and did not address the phrase "or analog thereof." Thus, it is somewhat unclear whether the Seventh Circuit intended to hold only that the phrase "any substance containing cocaine" was indivisible as opposed to concluding that the entire subsection, including the reference to cocaine analog offenses, is indivisible. For this reason, this Court finds *Ruth* informative but not necessarily dispositive of whether subsection (c)(1) is divisible as to heroin and heroin analogs.

A statute is not divisible if it simply "defines a single offense with alternative means of satisfying a particular element." *Elder*, 900 F.3d at 502 (internal quotation marks omitted). For present purposes, the question is whether subsection (c)(1) defines a single offense that can be satisfied no matter whether the substance involved is heroin or an analog of heroin, or whether it creates separate offenses for heroin and heroin analogs. The first step in the divisibility analysis is to consider "whether there is a decision by the state supreme court authoritatively construing the relevant statute and establishing which facts are elements and which are means." *Id.* (internal

13

quotation marks omitted). Despite multiple opportunities to do so, the parties have not identified any dispositive Illinois Supreme Court authority regarding whether a controlled substance offense is divisible from its analog offense, and the Court is not aware of any such authority. Consequently, the Court next looks to "the text and structure of the statute itself." *Id.*

"The difference between 'elements' and 'means' can seem slippery [and] sometimes almost metaphysical." *Najera-Rodriguez v. Barr*, 926 F.3d 343, 348 (7th Cir. 2019). "Elements" refer to the "'constituent' parts of a crime's legal definition—the things the 'prosecution must prove to sustain a conviction.'" *Id.* at 348–49 (quoting *Mathis*, 136 S. Ct. at 2248). On the other hand, "the facts of the offense 'are mere real-world things—extraneous to the crime's legal requirements,' and 'need neither be found by a jury nor admitted by a defendant.'" *Id.* at 349 (quoting *Mathis*, 136 S. Ct. at 2248). The text of a statute may clearly demonstrate its divisibility by explicitly identifying the elements. *Id.* In addition, if the statute's "alternatives carry different punishments," those alternatives "must be elements." *Id.* (internal quotation marks omitted). But where the statute simply offers "illustrative examples" of the "crime's means of commission," the statute is not divisible. *Id.* (internal quotation marks omitted).

The Court concludes that subsection (c)(1) is indivisible as between heroin and an analog thereof. First, 720 ILCS 570/401 states that "a controlled substance analog shall be treated in the same manner as the controlled substance to which it is substantially similar." This strongly suggests that manufacturing or distributing a heroin analog is simply an alternative means of committing the crime of manufacturing or distributing heroin. Moreover, heroin and heroin analogs are grouped together under subsection (c)(1) and subject to the same punishment; the nature of the punishment does not vary by whether the substance contains heroin or an analog thereof but rather by the quantity of the substance at issue. It is not just heroin that is given this

14

treatment. Rather, in each subsection of 720 ILCS 570/401 in which the controlled substance is listed separately, the controlled substance is followed by the phrase "or an analog thereof." Thus, analogs of all covered controlled substances are consistently treated the same and punished the same as the controlled substance that they mimic. Put differently, the text and structure of the statute evidences an intent to broaden the definition of each controlled substance to include any other substance designed as a substitute for that controlled substance. Particularly in light of the statute's command to treat analogs in the same manner as the corresponding controlled substance, manufacturing or delivering of a heroin analog should be viewed as simply an alternative means of committing the crime of manufacturing or delivering heroin.

The Illinois cases cited by the Government are not persuasive. First, the Government cites *People v. Fernandez*, 16 N.E.3d 151, 155–56 (Ill. App. Ct. 2014), where the Illinois Appellate Court explained that "when a defendant is subject to Class X sentencing [under 720 ILCS 520/401(a)] for possession of a controlled substance with intent to deliver, the drug type and amount are elements of the offense." In addition, the Government cites the Illinois Supreme Court's statement that, "[i]n a controlled substance case, the State must present sufficient evidence that the substance at issue is a controlled substance." *People v. Hagberg*, 733 N.E.2d 1271, 1273–74 (Ill. 2000).[2] Of course, this Court agrees that whether the substance contains "heroin, or an analog thereof" is an element of a violation of subsection (c)(1). The issue not answered by either of the Government's cases is whether the State must prove the exact identity

---

[2] The defendant's conviction in *Hagberg* arose under a different controlled substance statute than here, 720 ILCS 570/402(c). And that statute is structured differently, as it applies broadly to any "amount of a controlled substance other than methamphetamine or counterfeit substance not set forth" in other subsections of the statute. *Id.* Furthermore, the Seventh Circuit has previously found that 720 ILCS 570/402(c) is indivisible. *Najera-Rodriguez*, 926 F.3d 343. In making that finding, the Seventh Circuit addressed *Hagberg* and stated that "[t]o the extent [it] offers any guidance, its use of the general phrase 'a controlled substance' signals that the identity of the controlled substance is ***not*** an element under" 720 ILCS 570/402(c). *Najera-Rodriguez*, 926 F.3d at 353. Thus, under the Seventh Circuit's understanding of *Hagberg*, the case actually cuts against the Government's divisibility argument.

15

of the substance as between heroin and its analog, or whether it must simply prove that the substance is either heroin or one of its analogs. For the reasons discussed above, the Court concludes that the substance's status as either heroin or an analog concerns only alternative means of satisfying the same element.

Notably, the limited documents submitted by the Government from the record of Johnson's prior state conviction do not demonstrate subsection (c)(1)'s divisibility. *See Mathis*, 136 S. Ct. at 2256–57 (stating that a court is permitted to take a "peek at record documents" in the course of its divisibility analysis "for the sole and limited purpose of determining whether the listed items are elements of the offense" (internal quotation marks omitted)). Indeed, the certified statement of Johnson's conviction lists the charged offense as "720-570/401(c)(1) F1 MFG/DEL 1<15 GR HEROIN/ANALOG." That shorthand description of the charge does not differentiate between heroin and heroin analogs. Moreover, even as the Government argues for this Court to employ the modified categorical approach, it never actually points to anything in the record of Johnson's prior conviction that demonstrates that Johnson's prior offense involved heroin as opposed to a heroin analog. Thus, even if this Court applied the modified categorical approach, the Government has failed to prove that Johnson's prior conviction did not arise under the overbroad portion of subsection (c)(1). *See United States v. Templeton*, 543 F.3d 378, 384 (7th Cir. 2008) (stating that a sentencing enhancement may not be applied if the documents that may be considered in the modified categorical analysis do not yield a conclusive answer as to the defendant's precise crime of conviction).

In sum, Johnson's conviction under 720 ILCS 570/401(c)(1) was categorically broader than the definition of "serious drug felony" because its elements did not necessarily entail one of the types of conduct covered by federal law. Further, subsection (c)(1) is not divisible such that

the modified categorical approach would apply. Consequently, the Court sustains Johnson's objection to the imposition of the 15-year mandatory minimum. Instead, the 10-year mandatory minimum called for by § 841(b)(1)(A) applies.

### III. Objection to Application of Career Offender Guideline

In calculating Johnson's Guidelines range, the Presentence Investigation Report found that Johnson was a career offender for purposes of USSG § 4B1.1(a)(3) due to his two prior controlled substance offenses.[3] That classification increased Johnson's total offense level from 30 to 37 and moved him from criminal history category V to category VI. Johnson objects to the application of this career offender enhancement. Similar to his objection to the 15-year mandatory minimum, Johnson argues that the predicate offenses arose under Illinois laws that covered a broader array of controlled substances than federal law.

Under USSG § 4B1.1(a)(3), a defendant will be classified as a career offender where he has at least two prior felony convictions for a controlled substance offense. For purposes of this guideline, a controlled substance offense is defined at USSG § 4B1.2(b) as

> an offense under federal or state law, punishable by imprisonment for a term exceeding one year, that prohibits the manufacture, import, export, distribution, or dispensing of a controlled substance (or a counterfeit substance) or the possession of a controlled substance (or a counterfeit substance) with intent to manufacture, import, export, distribute, or dispense.

The Guidelines do not further define "controlled substance."

Here, *Ruth* is directly on point, as the Seventh Circuit held that "the career-offender guideline, and its definition of controlled substance offense, does not incorporate, cross-reference, or in any way refer to the Controlled Substance Act." *Ruth*, 966 F.3d at 651. Rather, the career offender guideline "defines the term controlled substance offense broadly, and the definition is

---

[3] In addition to his manufacturing and delivering heroin conviction, the other predicate controlled substance offense was Johnson's 2006 conviction for manufacture or delivery of a controlled substance.

17

most plainly read to include state-law offenses related to controlled or counterfeit substances punishable by imprisonment for a term exceeding one year." *Id.* at 654. Thus, the analysis does not require the Court to compare the competing definitions of "analog(ue)." It is sufficient that the crime was considered a controlled substance offense under Illinois law. For that reason, Johnson's objection to the career offender enhancement is overruled.

Nonetheless, to the extent Johnson contends that his prior criminal history, consisting of low-level offenses, should not merit career-offender treatment, that is an argument for a variance below the Guidelines range that he may raise in connection with the Court's consideration of the § 3553(a) factors. Moreover, at a recent hearing, Johnson raised various arguments challenging the calculation of his criminal history category. For example, he objected that he was given 3 criminal history points for an offense he committed before he turned 18. But that conviction was properly scored because Johnson was convicted as an adult and later had his probation revoked, resulting in Johnson being sentenced to 3 years' imprisonment. *See* USSG § 4A1.2(d)(1), (k)(1). Even if any of Johnson's discrete objections to his criminal history calculation were valid, it would not change his criminal history category given that his designation as a career offender automatically places him in category VI. Nonetheless, the Court has considered the Presentence Investigation Report's calculation of Johnson's criminal history category and finds that it was properly computed prior to the application of the career offender guideline. Having determined that the Presentence Investigation Report properly calculated Johnson's total offense level as 37 and his criminal history category as VI, his applicable Guidelines range calls for a sentence of between 360-months' and life imprisonment.

## CONCLUSION

For the foregoing reasons, Johnson's amended motion for a new trial (Dkt. No. 175) is denied and his objections to the Pretrial Investigation Report (Dkt. No. 116) are sustained in part and overruled in part. The Court concludes that Johnson is subject to a 10-year mandatory minimum sentence for his conviction in this case under 21 U.S.C. § 841(a). In addition, Johnson qualifies as a career offender under Guidelines § 4B1.1(a)(3). As a result, his total offense level for sentencing purposes is 37 and his criminal history category is VI, for a sentencing range under the Guidelines of 360 months to life imprisonment. At the final sentencing hearing, the Court will confirm that all objections to the Guidelines calculations in the presentence investigation report have been resolved.

ENTERED:

Dated: January 26, 2021

Andrea R. Wood
United States District Judge